## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>ANDRE CLARKE,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO. JKB-22-3241</td></tr>
<tr><td>MARTIN O'MALLEY,[1]<br>Commissioner,<br>Social Security Administration,</td><td>*<br><br>*</td><td></td></tr>
<tr><td>Defendant</td><td>*</td><td></td></tr>
</table>

*        *        *        *        *        *        *        *        *        *        *        *

### MEMORANDUM

Pending in this Title VII matter is a Motion to Dismiss, or in the Alternative, for Summary Judgment, filed by the Social Security Administration ("the SSA"). (ECF Nos. 17, 22, 25, 26.) The SSA has also moved to strike the contents of ECF No. 22-1. (ECF No. 25.) Plaintiff has moved for leave to file a surreply and excess pages; he also requests the opportunity to conduct further discovery. (ECF Nos. 22-2, 26-1, 26-3.) No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons below, the Court will: (1) grant Plaintiff's Motions; (2) grant in part and deny in part the request for discovery; (3) deny the SSA's Motion to Strike; and (4) grant in part and deny in part the SSA's Motion to Dismiss, or in the Alternative, for Summary Judgment.

### I.        *Factual Background and Procedural History*[2]

Plaintiff, a Black male, works as a Management Analyst at the SSA. (ECF No. 17-17 at

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security. Accordingly, he has been substituted as the Defendant in this case. *See* Fed. R. Civ. P. 25(d).

[2] Unless otherwise noted, the facts recited herein are undisputed.

4.)  Plaintiff is also the "Recognition Team" leader in the SSA's "Spark Initiative" program ("Spark Program"). (ECF No. 16-1 ¶¶ 21, 23–24.) Additionally, he leads the "Eligible for Direct Pay Non-Attorney Representative" program ("EDPNA Program"), which assists non-attorney representatives in aiding disability claimants. (*Id.* ¶ 28; ECF No. 17-17 at 5.)

Plaintiff's claims concern, among other things, the SSA's treatment of two other employees, Celica Bamford and Elizabeth Peightal, as compared to its treatment of Plaintiff. Bamford and Peightal are white females. (ECF No. 17-17 at 4.)  Plaintiff alleges that Bamford and Peightal perform work that is "substantially equal" to Plaintiff's work and that they are paid higher wages than Plaintiff. (ECF No. 16-1 ¶¶ 44, 51.) He also alleges that the SSA denied him the training and resources that it provided to Bamford and Peightal. (*Id.* ¶ 53.) Due to these alleged disparities in pay and treatment, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 30, 2017. (ECF No. 17-10 at 2.)

Plaintiff's supervisor, Miniya Maskal, was informed of Plaintiff's EEOC activity on June 15, 2017. (*Id.*) In a November 1, 2017 performance review, she rated Plaintiff's performance as a "3.5." (ECF No. 17-17 at 4, 7.) On November 8, 2017, Plaintiff amended his EEOC complaint to include a retaliation claim based on the performance review. (ECF No. 17-14 at 2.)

Plaintiff also alleges that he applied for, but was not selected to fill, multiple positions at the SSA "because of his race (Black) and/or sex (male), and/or because he engaged in prior protected activity." (ECF No. 16-1 ¶¶ 76, 81, 96, 107, 110.) Between June 2020 and May 2021, Plaintiff applied to five jobs at the SSA (hereinafter referred to as "Position One," "Position Two," "Position Three," "Position Four," and "Position Five"). (*Id.* ¶¶ 65, 77, 82, 97, 106.)  He interviewed for Positions One through Four but did not interview for Position Five. (*Id.* ¶¶ 67, 79, 83, 101; ECF No. 22-2 at 2.)  He was not selected to fill any of these positions. (ECF No. 16-1 ¶¶

2

·75, 80, 94, 105, 109.) On November 19, 2020, Plaintiff filed a second EEOC complaint in which he raised discrimination and retaliation claims concerning his non-selection for Positions One and Two. (ECF No. 17-18 at 6.) He later amended that complaint to include discrimination and retaliation claims related to his non-selection for Positions Three and Four. (*Id.* at 7, 23.) He did not complain to the EEOC regarding Position Five. (ECF No. 22 at 10.) The SSA investigated the November 2020 EEOC complaint from January 6, 2021 to March 31, 2021, and from April 30, 2021 to July 5, 2021. (ECF No. 17-20 at 4.)

Plaintiff alleges that, for each of the positions he applied to, the "ultimate" hiring decision was made by Gina Clemons (the Associate Commissioner for the Office of Disability Policy) and Steven Rollins (the Deputy Associate Commissioner for the Office of Disability Policy who reported to Clemons). (ECF No. 16-1 ¶¶ 91, 161; ECF No. 22-8 at 2–3.) Plaintiff alleges that Clemons: (1) called him a "troublemaker"; (2) informed individuals involved in the hiring process about his prior protected activity; and (3) influenced aspects of the hiring process to "preclude" Plaintiff from being selected. (ECF No. 16-1 ¶¶ 88, 92, 111–19.)

Based on the allegations above, Plaintiff asserts the following Title VII claims: (1) wage discrimination based on sex and race with regard to the alleged pay gap between Plaintiff, Peightal, and Bamford; (2) disparate treatment based on sex and race with regard to the alleged treatment and resource disparity between Plaintiff, Peightal, and Bamford; (3) retaliation with regard to the performance review issued by Maskal; and (4) race and sex discrimination and retaliation with regard to Plaintiff's non-selection for Positions One through Five.[3] (*Id.* ¶¶ 150–212.)

Plaintiff filed this case on December 15, 2022. (ECF No. 1.) The SSA moved to dismiss

---

[3] The Amended Complaint contains three counts. (ECF No. 16-1 ¶¶ 150–212.) The third count is labeled "Count VI," which the Court construes as a typographical error. (*Id.* at 24.)

the case on June 8, 2023. (ECF No. 13.) In lieu of responding to that Motion, Plaintiff amended the Complaint on June 21, 2023.[4] (ECF No. 16.) The SSA then filed the instant Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 17.)

The SSA argues that Plaintiff did not exhaust his administrative remedies with respect to Position Five and certain other allegations. (ECF No. 17-1 at 11–14.) It also avers that Plaintiff does not establish a prima facie wage discrimination or disparate treatment case. (*Id.* at 16–21.) Further, the SSA moves to dismiss Plaintiff's retaliation claims on the grounds that: (1) Maskal's performance review was not an adverse action; (2) protected activity did not influence the performance review; and (3) protected activity did not cause Plaintiff's non-selection for Positions One through Four. (*Id.* at 27–32.) The SSA concedes that Plaintiff establishes a prima facie failure-to-hire case but seeks summary judgment on Plaintiff's failure-to-hire claims on the grounds that: (1) the SSA had legitimate, nondiscriminatory reasons for not hiring Plaintiff and (2) Plaintiff identifies no evidence of pretext. (*Id.* at 16, 21–27.)

Plaintiff responds that he has exhausted all administrative remedies and has plausibly alleged each of his claims. (ECF No. 22 at 6–24.) He argues that the current record, composed of material discovered at the administrative level, contains genuine disputes of material fact that preclude summary judgment. (*Id.* at 24–30.) "[O]ut of an abundance of caution," he also avers that summary judgment is premature and seeks the opportunity to perform discovery related to certain claims in this case. (*Id.* at 24.) To that end, he has attached a Rule 56(d) Declaration to his Motion that outlines the additional facts he seeks to discover. (ECF No. 22-2.)

---

[4] As the Motion to Dismiss filed on June 8, 2023 does not concern the operative pleading, the Court will deny it as moot.

## II.    Legal Standards

### A.    Rules 12(b)(6) and 56

The SSA's Motion is styled as a Motion to Dismiss or, in the alternative, as a Motion for Summary Judgment. (ECF No. 17.) It therefore provides the Court with discretion to consider matters outside the pleadings pursuant to Federal Rule 12(d). *See Kensington Volunteer Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). The Court may exercise this discretion when a plaintiff has "actual notice" that the Court may dispose of a motion under Rule 56. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (recognizing that parties are on notice when a movant captions its motion as one for summary judgment "in the alternative" and submits matters outside the pleadings). The Court may convert all or part of a motion to dismiss into a motion for summary judgment. *See Dickerson v. United Parcel Serv., Inc.*, Civ. No. WMN-15-2, 2015 WL 3889975, at *2 (D. Md. June 23, 2015).

In determining whether to exercise its discretion under Rule 12(d), the Court is "guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004, 2012 Supp.)). "When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion[,] the district court is likely to accept it," but "when the extraneous material is 'scanty, incomplete, or inconclusive, the district court probably will reject it.'" *Id.* (quoting Wright & Miller, *supra*, § 1366).

Insofar as the SSA's Motion seeks dismissal pursuant to Rule 12(b)(6), Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption

that all of the [pleading's] allegations are true[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545

(2007). Plaintiff need not "'forecast' evidence sufficient to prove the elements of [a] claim.

However, [his pleading] must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Insofar as the SSA's Motion seeks summary judgment, the SSA must show that "no

genuine dispute as to any material fact" exists and that the SSA is "entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable jury could return a verdict

for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

A material fact is one that "might affect the outcome of the suit under the governing law[.]"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence in the

light most favorable to the nonmoving party and draws all reasonable inferences in that party's

favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Rule 56(d)

Rule 56(d) prevents the Court from granting summary judgment "where the nonmoving

party has not had the opportunity to discover information that is essential to his opposition." *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016). To justify further discovery before

summary judgment, a party must generally file an affidavit explaining the reasons that it cannot

present facts essential to its opposition without further discovery, *see Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), and listing the specific evidence

that it seeks to obtain, *see Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011). If the party

shows that it cannot present facts essential to its opposition, "the court may: (1) defer considering

the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

issue any other appropriate order." Fed. R. Civ. P. 56(d).

### C.    Title VII

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against individuals based on "race, color, religion, sex, or national origin" and from retaliating against an employee based on their opposition to an "unlawful employment practice[.]" 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). When analyzing Title VII claims, "courts employ [the] burden-shifting scheme" set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), "whereby a plaintiff first bears the burden of establishing a prima facie case, then the defendant bears the burden of presenting a legitimate, non-discriminatory reason for its employment action, and finally the plaintiff bears the burden of showing that the explanation proffered by the defendant was merely a pretext." *Spencer v. Va. State Univ.*, Civ. No. HEH-16-989, 2018 WL 627558, at *11 (E.D. Va. Jan. 30, 2018) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802; *Taylor v. Va. Union Univ.*, 193 F.3d 219, 230 (4th Cir. 1999)), *aff'd*, 919 F.3d 199 (4th Cir. 2019), *as amended* (Mar. 26, 2019).

### III.    Analysis

For the following reasons, the Court will: (1) dismiss the discrimination and retaliation claims concerning Position Five; (2) grant summary judgment in favor of the SSA with respect to Plaintiff's disparate treatment and wage discrimination claims; (3) dismiss the retaliation claim concerning Plaintiff's direct supervisor; (4) deny summary judgment without prejudice with respect to the failure-to-hire and retaliation claims concerning Positions One through Four; and (5) grant in part and deny in part Plaintiff's request to conduct additional discovery.[5]

---

[5] Plaintiff also filed a surreply containing responses to exhaustion-related arguments raised in the SSA's reply brief. (ECF No. 26.) He simultaneously moved for leave to file the surreply. (ECF No. 26-3.) The Court will grant leave for good cause shown. Additionally, the SSA moved to strike the contents of ECF No. 22-1 and Plaintiff moved for leave to file excess pages. (ECF Nos. 25, 26-1.) The Court will deny the SSA's Motion to Strike and grant Plaintiff's Motion for Leave to File an Opposition in Excess of Thirty Pages for the reasons explained below.

### A.   *Exhaustion of Administrative Remedies*

As an initial matter, the SSA argues that Plaintiff has failed to administratively exhaust:
(1) his discrimination and retaliation claims concerning Position Five and (2) certain allegations
concerning Positions One through Four. (ECF No. 17-1 at 11–14; ECF No. 25 at 5–6.) "Before
filing suit under Title VII, a plaintiff must exhaust [his] administrative remedies by bringing a
charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).
Failure to hire is a "discrete allegation[]" that must be exhausted "separately" from other
allegations. *Senior v. Potter*, Civ. No. CCB-06-2894, 2008 WL 822128, at *2 n.3 (D. Md. Mar.
25, 2008) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Plaintiff did not complain to the EEOC regarding his non-selection for Position Five. (ECF
No. 25 at 6; ECF No. 22 at 10.)   Consequently, he has failed to exhaust the discrimination and
retaliation claims that concern this position. *See Venable v. Pritzker*, Civ. No. GLR-13-1867, 2014
WL 2452705, at *11 (D. Md. May 30, 2014) (holding that claims regarding a non-selection that
occurred in September 2010, which were "raised for the first time" before the district court, had
not been exhausted even though the plaintiff filed an EEOC complaint regarding a different non-
selection that occurred in January 2011), *aff'd in part and aff'd as modified in part*, 610 F. App'x
341 (4th Cir. 2015).   The Court will therefore dismiss Plaintiff's claims concerning Position Five.

With respect to Positions One through Four, the SSA acknowledges that Plaintiff
complained to the EEOC regarding his "non-selection based on . . . race and sex, as well as
reprisal[.]" (ECF No. 17-1 at 12.)   Nonetheless, the SSA asserts that Plaintiff never complained
to the EEOC regarding: (1) Clemons's "influence" over Plaintiff's non-selection for Positions One
through Four or (2) Clemons's "continued discrimination and retaliatory treatment" with respect
to these non-selections. (*Id.*; ECF No. 25 at 2, 5.)   The SSA therefore argues that these allegations

were not administratively exhausted. (ECF No. 17-1 at 12; ECF No. 25 at 2, 5.)

The Court disagrees. "An administrative charge . . . does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge[.]" *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). A plaintiff's administrative remedies are properly exhausted if the factual allegations in the plaintiff's EEOC complaint are "reasonably related to the factual allegations in the formal litigation[.]" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). For example, the Fourth Circuit has "found exhaustion where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,' . . . and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594 (4th Cir. 2012) (brackets in original) (quoting *Chisholm*, 665 F.2d at 491 and citing *Smith*, 202 F.3d at 247).

Although Plaintiff did not convey allegations concerning Clemons's influence or statements to the EEOC, these allegations are factually linked to the non-selection claims raised in Plaintiff's 2020 EEOC complaint. Moreover, an EEOC investigator questioned an SSA employee about Clemons's "influence" over Plaintiff's interviews, (ECF No. 17-18 at 27), so these allegations could also be "expected to follow" an investigation of Plaintiff's complaint, *Sydnor*, 681 F.3d at 594. The Court therefore declines to dismiss these allegations for failure to exhaust.[6]

### B.    *Wage Discrimination Claims*

The Court next addresses Plaintiff's wage discrimination claims. Title VII prohibits, inter

---

[6] The SSA also argues that Plaintiff failed to exhaust allegations of "comments from" Rollins. (ECF No. 17-1 at 13.) Because the Amended Complaint contains no allegations regarding comments made by Rollins, (*see generally* ECF No. 16-1), this argument is unavailing.

alia, discrimination in compensation based on sex and/or race. *See* 42 U.S.C. § 2000e-2(a)(1). Wage discrimination can be proven through "direct or circumstantial" evidence or by establishing a prima facie case under the *McDonnell Douglas* framework. *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). To establish a prima facie case, a plaintiff must prove: (1) that he belongs to a protected class; (2) that he was performing his job satisfactorily; (3) that an adverse employment action occurred; and (4) that the circumstances "suggest an unlawfully discriminatory motive." *Id.* (citations omitted).

When a plaintiff bases his prima facie case on the wages received by other individuals, the plaintiff must "show that [he] is paid less" than people outside his protected class who perform "similar jobs." *Id.* (citing *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994)). "While there is no bright-line rule for what makes two jobs 'similar,'" courts consider "'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Id.* (citations omitted). A plaintiff "must provide evidence that the proposed comparators are not just similar in *some* respects, but 'similarly-situated *in all respects*.'" *Id.* (emphasis in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff offers no direct or circumstantial evidence of wage discrimination but attempts to establish a prima facie case by asserting that he, Bamford, and Peightal perform similar work. (ECF No. 22 at 18.) It is undisputed that Plaintiff is compensated at the "GS-13" pay scale and that Bamford and Peightal are compensated at the "GS-14" pay scale. (ECF No. 17-17 at 4.)

Plaintiff argues that Bamford is an apt comparator because he and Bamford "perform[] similar tasks" as Spark Program leaders. (ECF No. 22 at 18.) It is unclear whether the two share

a supervisor, but Plaintiff's argument is unavailing because Bamford's work as a Spark Program leader represents just "10-15% of her duties[.]" (ECF No. 17-17 at 4.) Outside of her Spark Program role, Bamford's duties include:

> working on a high-priority initiative called the National Disability Forum, . . . becoming a certified mediator and working with Human Resources to mediate lawsuits against the Agency, initiating and developing two micro-learning activities[,] being coordinator for . . . audits[,] writing recommendations for Agency commitments[,] regularly briefing high level executives, regularly being called on by the Associate Commissioner to review and answer questions about policy, being the Officer in Charge (OIC) when Maskal was out of the office, preparing a disability policy training manual[,] and acting as the main point of contact for the Associate Commissioner[.]

*Id.* Plaintiff does not dispute this description of Bamford's job responsibilities and the record contains no indication that Plaintiff performs any of the above-referenced tasks. Plaintiff also does not attempt to explain how his comparator argument can prevail despite the litany of responsibilities held by Bamford and not Plaintiff. The Court is therefore unpersuaded that Bamford's work is similar to Plaintiff's work in all respects. *See Spencer*, 919 F.3d at 207.

Plaintiff fares no better in comparing himself to Peightal. As leader of the EDPNA Program, Plaintiff creates videos, writes scripts, presents trainings, writes for a website, arranges meetings with experts, reports to management, consults with the Office of General Counsel, responds to protests, reviews surveys, and communicates with outside groups. (ECF No. 17-17 at 5.) Peightal, by contrast, leads the Continuing Medical Education ("CME") program, "which is an accredited national program that allows physicians and psychologists to obtain continuing education credits[.]" (*Id.*) Uncontroverted testimony makes clear that Plaintiff's and Peightal's leadership roles differ considerably in terms of scope and oversight from superiors. (*See, e.g., id.* at 6 (testimony that Peightal writes budget justifications and participates in budget meetings and that Plaintiff's EDPNA duties do not involve budget work); *id.* (testimony that Plaintiff receives daily oversight and relies on a contractor to manage much of the EDPNA Program, whereas

11

Peightal runs CME on her own).) These undisputed differences undermine Plaintiff's contention that these two jobs are alike in terms of description and standards. *See Spencer*, 919 F.3d at 207.[7]

As noted above, Plaintiff avers that summary judgment is premature at this juncture. (ECF No. 22 at 24.) Even so, the record constructed at the administrative level concerning the job descriptions of Plaintiff, Peightal, and Bamford is "comprehensive" enough to "enable a rational determination of a summary judgment motion" on Plaintiff's wage discrimination claims. *Wells-Bey v. Kopp*, Civ. No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013). Plaintiff has not requested the opportunity to perform additional discovery on the nature of the jobs performed by Peightal or Bamford, (*see generally* ECF No. 22-2), which also weighs in favor of construing these claims under Rule 56, *see Wells-Bey*, 2013 WL 1700927, at *5. Lastly, construing these claims under Rule 56 is warranted because it will completely dispose of the claims and consequently "facilitate the disposition of the action[.]" *Id.* The Court will therefore construe this part of the SSA's Motion under Rule 56.

As the record lacks "evidence on which a jury could rely to decide that" Plaintiff performs work substantially similar to Bamford's or Peightal's work, the Court will grant summary judgment in favor of the SSA on these claims and dismiss the claims. *Spencer*, 919 F.3d at 205; Fed. R. Civ. P. 56.

## C.   *Disparate Treatment Claims*

Plaintiff also asserts disparate treatment claims based upon his allegation that the SSA

---

[7] To be sure, Plaintiff and Peightal share a supervisor. (ECF No. 17-17 at 9–10.) But this shared characteristic, without more, is insufficient to support Plaintiff's prima facie wage discrimination case. *See Watson v. Va. Dep't of Agric. & Consumer Servs.*, Civ. No. 3:19-CV-466, 2021 WL 6498848, at *4 (E.D. Va. Mar. 12, 2021) (granting summary judgment on wage discrimination claim because, while plaintiff and putative comparators "reported to the same supervisors," they were not "subject to the same standards"), *aff'd*, No. 21-1337, 2022 WL 4244506 (4th Cir. Sept. 15, 2022), *cert. denied*, 143 S. Ct. 1786 (2023).

denied him training and resources that it afforded to Bamford and Peightal. The "disparate treatment" provision of Title VII prohibits employers from "discriminat[ing] against" an individual on the basis of race and/or sex with respect to the "terms, conditions, or privileges" of employment. 42 U.S.C. § 2000e-2(a)(1); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Plaintiff can prove disparate treatment through direct and/or circumstantial evidence or, as he attempts to do here, through the *McDonnell Douglas* framework. *See Jenks v. City of Greensboro*, 495 F. Supp. 2d 524, 527 (M.D.N.C. 2007). To establish a prima facie disparate treatment case, Plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

The record lacks clarity as to the respective training and resources that the SSA provided to Plaintiff, Bamford, and Peightal. Nevertheless, summary judgment is appropriate because Plaintiff fails to establish that any denial of training or resources constituted an adverse action. In a disparate treatment case, adverse actions must have a "tangible effect on the terms and conditions of employment." *Jabari-Kitwala v. Montgomery Cnty. Pub. Schs.*, Civ. No. GLS-22-0069, 2023 WL 4175359, at *5 (D. Md. June 23, 2023) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (categorizing hiring, firing, failing to promote, and reassignment to a new position with different responsibilities as "adverse")). "[D]enial of a training opportunity" is adverse only if "the denial materially affects the plaintiff's pay, hours, job title, responsibilities, promotional opportunities, and the like." *Walker v. D.C.*, 279 F. Supp. 3d 246, 262 (D.D.C. 2017).

Plaintiff asserts that the SSA denied him resources and training, which, in turn, "altered the conditions and benefits" of his employment. (ECF No. 22 at 16.) He provides no evidence to support this contention. Instead, he postulates that a lack of training could cause "an employee's

13

performance [to] suffer" and asserts that "it is hard for an employee . . . to succeed if they request resources from management but are not provided [them.]" *Id.* However, Plaintiff identifies no evidence that shows how the SSA's alleged denial of training and resources affected him *directly.* Indeed, Plaintiff alleges that he "[e]xcelled in his role as the lead for EDPNA" despite the SSA withholding "necessary resources" from him. (ECF No. 16-1 ¶ 42.) He therefore fails to establish that the alleged denial of training and resources had an effect—let alone a *tangible* effect—on the terms or conditions of his employment. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (recognizing that "speculations about the impact of" an alleged adverse action on an employee's "opportunities for professional development are merely that—stark assertions that are not sufficient to survive summary judgment").

In determining whether to dispose of Plaintiff's disparate treatment claims under Rule 56, the Court considers whether "discovery prior to the utilization of the summary judgment procedure" is necessary. *Wells-Bey*, 2013 WL 1700927, at *5. Plaintiff's 56(d) Declaration seeks discovery concerning "why [he] was not provided with the training and resources he requested[.]" (ECF No. 22-2 at 5.) But this proposed discovery would not show how the alleged denial of training and resources was adverse. It would therefore not create a "genuine issue of material fact sufficient to defeat summary judgment" on these claims. *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995). Additionally, Plaintiff identifies no other discovery request which, if fruitful, could salvage these claims. As a final matter, construing this part of the SSA's Motion under Rule 56 "facilitate[s] the disposition" of this case because it disposes of the claim entirely. *Wells-Bey*, 2013 WL 1700927, at *5. The Court therefore exercises its discretion to dispose of this part of the SSA's Motion under Rule 56. *See id.* As Plaintiff fails to establish an element of his prima facie case, the Court grants summary judgment in favor of the SSA with respect to the disparate

treatment claims and dismisses these claims. *See* Fed. R. Civ. P. 56.

### D.    *Retaliation Claim Concerning Plaintiff's Supervisor*

The Court next considers Plaintiff's retaliation claim concerning a performance review issued by his direct supervisor, Miniya Maskal. "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

"[A] plaintiff is not required to plead facts that constitute a prima facie case [of retaliation] in order to survive a motion to dismiss," but the pleading "must . . . raise a right to relief above the speculative level." *Id.* (citation omitted). To do so, the pleading must "allege[] facts supporting a plausible inference" that an adverse action occurred "'because' of" protected activity. *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)). "Temporal proximity" between protected activity and an alleged adverse action may support an inference of causation. *Id.* In the absence of temporal proximity, courts "look to the intervening period" between protected activity and an adverse action for other evidence of causation. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Plaintiff alleges that the SSA informed Maskal about his 2017 EEOC complaint on June 15, 2017. (ECF No. 16-1 ¶ 132.) He further alleges that Maskal provided him with an "unfavorable performance review" on November 1, 2017.[8] (*Id.* ¶ 134.) Because Plaintiff alleges no "intervening events" between his protected activity and his receipt of the performance review that might demonstrate causation, the Court must consider whether Plaintiff plausibly alleges

---

[8] Plaintiff also alleges that Maskal "forced" him to rewrite a script in October 2017. (ECF No. 16-1 ¶ 133.) Because Plaintiff does not argue that this was an adverse action, (*see generally* ECF No. 22), the Court does not consider this allegation in the context of Plaintiff's retaliation claim involving Maskal.

retaliation based on temporal proximity alone. *Holloway*, 32 F.4th at 300.

The Fourth Circuit has held that "a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation 'is too long to establish a causal connection by temporal proximity alone.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (per curiam)). Here, a span of over four months separated Maskal's discovery of Plaintiff's EEOC activity from her submission of Plaintiff's performance review. (ECF No. 16-1 ¶¶ 132, 134.) This retaliation claim therefore fails because Plaintiff does not plausibly allege a causal connection between his protected activity and the alleged adverse action. *See Pascual*, 193 F. App'x at 233.

Because this retaliation claim cannot survive a motion to dismiss on 12(b)(6) grounds, the Court determines that assessing the claim under Rule 56 is neither warranted nor "likely to facilitate the disposition of" this case. *Wells-Bey*, 2013 WL 1700927, at *5. The Court therefore declines to consider materials outside the pleadings in assessing this claim and grants the SSA's Motion to dismiss the claim under Federal Rule 12(b)(6).[9] *See id.*; Fed. R. Civ. P. 12(b)(6).

### E.    *Failure-to-Hire and Retaliation Claims Concerning Job Vacancies*

The remaining claims in this case concern allegations of discrimination and retaliation based upon Plaintiff's non-selection for Positions One through Four. These claims involve a common set of facts and arguments, so the Court considers them jointly. Because the record is "comprehensive" enough to "rational[ly]" evaluate these claims under Rule 56, and because doing so will expedite their disposition, the Court assesses these claims under Rule 56. *Wells-Bey*, 2013 WL 1700927, at *5.

As stated above, a prima facie retaliation case requires a showing of engagement in

---

[9] Because this claim cannot survive a motion to dismiss under Rule 12(b)(6), the Court does not consider Plaintiff's request for additional discovery concerning the claim.

protected activity, an adverse action, and a causal connection between the two. *See Coleman*, 626 F.3d at 190. In addition to prohibiting retaliation, *see* 42 U.S.C. § 2000e-3(a), Title VII prohibits an employer from failing to hire an individual because of race and/or sex, *see id.* § 2000e-2(a)(1). Failure to hire may be proven by direct and/or circumstantial evidence or by establishing a prima facie case under *McDonnell Douglas*. *See Phillips v. Loudoun Cnty. Pub. Schs.*, Civ. No. 19-501, 2019 WL 5445292, at *4 (E.D. Va. Oct. 23, 2019). Plaintiff may establish a prima facie failure-to-hire case by proving that he: (1) is a member of a protected class; (2) applied for a position; (3) was qualified for it; and (4) was rejected under circumstances that suggest unlawful discrimination.[10] *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004).

However, a court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case" of discrimination or retaliation if the plaintiff "has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason" for that action. *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 121 (D. Md. 2019) (emphasis in original) (explaining that a prima facie case is "no longer relevant" in such a situation). Here, the SSA has articulated legitimate, non-discriminatory rationales for each of Plaintiff's non-selections. (*See* ECF No. 17-1 at 16–24 (explaining that the SSA rejected Plaintiff because he lacked experience held by other applicants, he scored lower than other applicants on metrics used in the hiring process, and he was less qualified than the candidates that the SSA ultimately selected).) Moreover, the non-selections were adverse actions. *See EEOC v. Pbm Graphics*, 877 F. Supp. 2d

---

[10] Curiously, the SSA concedes that Plaintiff establishes a prima facie failure-to-hire case with respect to Positions One through Four but also argues that these claims are "deficiently pled" under Rule 12(b)(6). (ECF No. 17-1 at 14, 16.) The Fourth Circuit has held that a plaintiff asserting discrimination in hiring must allege that they were "denied a position . . . in favor of someone outside [the] protected class" who was less qualified than the plaintiff to survive a 12(b)(6) motion. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015). Given this, the SSA's 12(b)(6) argument may have been persuasive if it were better developed. But, because the SSA does not explain why dismissal of these failure-to-hire claims is warranted under Rule 12(b)(6), the Court will not attempt to dispose of them under that rule.

334, 346 (M.D.N.C. 2012) ("In the failure to hire context, an employer's decision not to give a job to a qualified applicant is . . . adverse[.]") (collecting cases); *Maine v. Azar*, Civ. No. GLR-16-3788, 2021 WL 3617215, at 9 n.8 (D. Md. Aug. 16, 2021) ("A failure to promote . . . supports a claim for retaliation[.]").

The Court must therefore assume that Plaintiff has established prima facie cases of retaliation and discrimination concerning Positions One through Four and proceed to *McDonnell Douglas*'s final step: determining whether "a factfinder could conclude that [the SSA's] proffered legitimate reason[s] [were] pretextual[.]" *Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d at 121. Plaintiff may prove pretext by showing that the SSA's "explanation . . . is 'unworthy of credence' or . . . false." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005).

Plaintiff attempts to prove pretext by several means. First, he contends that the SSA's reasons for failing to hire him are dubious because Clemons called him a "troublemaker." (ECF No. 22 at 26.) While the SSA does not dispute that this comment was made, "[c]ourts in this circuit have widely recognized that stray comments cannot alone" support a Title VII claim. *Myers v. Wood*, Civ. No. 0:12-422-JFA-PJG, 2013 WL 4823171, at *7 (D.S.C. July 24, 2013). Moreover, the record is silent as to when Clemons called Plaintiff a troublemaker and as to the context in which she did so.[11] The Court therefore declines to conclude, based on this sole utterance, that "a discriminatory [or retaliatory] reason . . . likely motivated" Plaintiff's non-selections. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff also argues that the SSA's asserted reasons for failing to hire him were pretextual because, between June 2020 and February 2021, the candidates chosen over Plaintiff were all white females. (ECF No. 22 at 28.) But, as stated above, the SSA has articulated that each of the hires

---

[11] Plaintiff does not seek additional discovery concerning this comment. (*See generally* ECF No. 22-2.)

for Positions One through Four "were more qualified" than Plaintiff. (ECF No. 17-1 at 24.) Because Plaintiff fails to establish that his "qualifications were so plainly superior that the [SSA] could not have preferred another candidate," this pretext argument fails to "contradict[]" or "undermine[] the credibility of" the SSA's proffered rationale and is therefore unavailing. *Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d at 122.

Plaintiff also seeks to prove pretext under a "'cat's paw' theory" of liability. (ECF No. 22 at 25 (citing *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011).) In *Staub*, the Supreme Court considered "the circumstances under which an employer may be held liable . . . based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision." *Smyth-Riding v. Scis. & Eng'g Servs., LLC*, 699 F. App'x 146, 155 (4th Cir. 2017) (quoting *Staub*, 562 U.S. at 413). The "cat's-paw" theory articulated in *Staub* provides that, "if a supervisor performs an act motivated by [unlawful] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the . . . action, then the employer is liable" under Title VII. *Id.* (brackets and emphasis in original) (quoting *Staub*, 562 U.S. at 422). A supervisor's animus may support liability under this theory "only if the supervisor was, in effect, principally responsible for, or the actual decisionmaker behind, the action, such as when the formal decisionmaker simply rubberstamped the supervisor's recommendation." *Traore v. Balt. Police Dep't*, Civ. No. MJM-22-793, 2023 WL 8600553, at *9 (D. Md. Dec. 12, 2023) (quoting *Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018)).

Plaintiff attempts to prove pretext under a cat's-paw theory by asserting that Clemons manipulated job interviews to ensure that Plaintiff was not hired. (ECF No. 22 at 27.) He contends: (1) that Clemons informed interview panelists of Plaintiff's protected activity to

"prejudice" the panelists' opinions of Plaintiff and (2) that Clemons "created the KSAs[12] which impacted how the individual applicants were assessed for each position that [Plaintiff] applied to." (*Id.*)  Plaintiff avers that these actions gave Clemons "significant control over who would . . . be considered the best candidate for the positions." (*Id.*)

Plaintiff's argument finds some support in the record.  Undisputedly, Clemons had supervisory authority over Plaintiff. (ECF No. 22-4 at 2.) Clemons also acknowledged that she reviewed interview questions and KSAs and that she forwarded the recommendations of the interview panelists. (ECF No. 22-5 at 3–4.) SSA employees who conducted some of Plaintiff's interviews testified to knowing about Plaintiff's protected activity. (ECF No. 22-7 at 3; ECF No. 22-8 at 4.) One of those employees testified that this information "might have stemmed" from Clemons. (ECF No. 22-7 at 3.) Rollins testified that he was not involved in the interview process and that the interview panelists "provided a recommendation to [him], outlining who they recommended for the job. [He] read through their recommendation, concurred with it, and approved it." (ECF No. 22-8 at 7.)

Notwithstanding these facts, Plaintiff falls short of proving pretext under a cat's-paw theory.  Despite Clemons's involvement in the interview process, nothing in the factual record indicates that she acted with—or was motivated by—animus. *Cf. Staub*, 562 U.S. at 422 (requiring a supervisor's act to be "motivated by" unlawful animus). In recognition of this issue, Plaintiff requests the opportunity to conduct further discovery. (ECF No. 22 at 24.) To this end, he has filed a Rule 56(d) Declaration in which he states his intention to discover facts concerning Clemons's "motivations" in creating the metrics for the positions he applied to "as well as her role

---

[12] The parties' filings repeatedly refer to "KSAs." (*See, e.g.*, ECF No. 16-1 ¶ 15; ECF No. 25 at 5–6.) Although neither party explains the form that KSAs take or the specific role they play in the hiring process, KSAs appear to be a metric used when evaluating candidates for SSA vacancies.

in reviewing interview questions, selecting the interview panel[s], and influencing the interview panelists by informing them of [Plaintiff's EEOC] activity." (ECF No. 22-2 at 6.) Plaintiff also seeks to discover whether a required "writing exercise" for Position Four "was actually sent to him" and whether Clemons "followed [SSA] practices, policies, and/or procedures" during the interview process. (*Id.* at 2, 4.) He states that he has not had the opportunity to discover these facts. (*Id.* at 6.) He intends to depose Clemons and obtain the "relevant emails and Microsoft Teams chat logs of" individuals involved in the interviews, which will "provide evidence of" Clemons's animus. (*Id.* at 1.)

Plaintiff's Declaration persuades the Court that discovery pertaining to his cat's-paw theory of liability is warranted. Rule 56(d) directs the Court to deny summary judgment when "the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016). The Court has also recognized that a need to obtain discovery from the "primary management official" who is "alleged to have discriminated and retaliated against" a plaintiff weighs in favor of permitting additional discovery. *Faulkenberry v. U.S. Dep't of Def.*, Civ. No. JMC-22-1150, 2023 WL 3074639, at *7–8 (D. Md. Apr. 25, 2023) (finding that, although a plaintiff "ha[d] not identified specific facts that she [sought] to elicit from" her superior, additional discovery was warranted under Rule 56(d) because a "deposition [was] likely to shed light on [the superior's] motives"). Because Plaintiff has identified facts that could shed light on whether Clemons was motivated by unlawful animus and proximately caused Plaintiff's non-selections under a cat's-paw theory of liability, the Court will permit further discovery on this issue. *See Works v. Colvin*, 519 F. App'x 176, 177 (4th Cir. 2013) (holding that further discovery was warranted where a plaintiff "set forth . . . specific, discoverable evidence" that "could help . . . to develop [a] theory of pretext").

21

Having determined that Plaintiff "cannot present facts essential to justify [his] opposition," the Court may proceed by issuing "any . . . appropriate order." Fed. R. Civ. P. 56(d). The Court will therefore: (1) deny the SSA's Motion for Summary Judgment on these discrimination and retaliation claims without prejudice and (2) limit additional discovery to the issue of whether the SSA's reasons for not hiring Plaintiff were pretextual under a cat's-paw theory of liability. *See id.*

### F.   *Motion to Strike*

The Court lastly addresses the SSA's Motion to Strike the contents of ECF No. 22-1. (ECF No. 25 at 3.) The SSA contends that this filing, which totals seventeen pages and contains Plaintiff's "Statement of Facts" and "Response to Defendant's Statement of Facts," causes the opposition brief filed at ECF No. 22 to exceed Local Rule 105.3's page limitation.[13] (*Id.* at 3–4.) Plaintiff did not request consent to exceed this limitation. (*Id.* at 4 n.1.) Because the combined length of ECF Nos. 22 and 22-1 exceeds the page limitation, the SSA asks the Court to strike ECF No. 22-1. (*Id.* at 4.) Plaintiff responds that Local Rule 105.3's text is silent as to whether statements of fact are included in the rule's thirty-page limit. (ECF No. 26 at 3.) He has moved, out of time, for leave to file excess pages. (ECF No. 26-1.)

The Court is concerned that the SSA's requested relief would present "costs to both the parties and to judicial economy." *Brown v. Brown's Md. Motors, Inc.*, 607 F. Supp. 3d 620, 626 (D. Md. 2022). The Court is also reluctant to strike a filing when, as here, no prejudice resulting from the filing's length is identified. *See id.* (determining that a finding of "minimal prejudice" counseled against striking an oversized filing). The Court will therefore deny the SSA's Motion to Strike and grant Plaintiff leave to file the excess pages.

---

[13] Local Rule 105.3 provides that, "[u]nless otherwise ordered by the Court, memoranda . . . shall not exceed thirty (30) pages, . . . inclusive of footnotes but exclusive of (a) affidavits and exhibits, (b) tables of contents and citations, and (c) addenda containing statutes, rules, regulations, and similar material." Local Rule 105.3 (D. Md. 2023).

### *IV.* *Conclusion*

For the foregoing reasons, the SSA's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 17) will be granted in part and denied in part. The previously filed Motion to Dismiss (ECF No. 13) will be denied as moot. The SSA's Motion to Strike (ECF No. 25) will be denied. Plaintiff's Motion for Leave to File a Surreply (ECF No. 26-3) and Motion for Leave to File an Opposition in Excess of Thirty Pages (ECF No. 26-1) will be granted. Plaintiff's request for additional discovery (ECF No. 22-2) will be granted only to the extent that Plaintiff seeks discovery on the issue of whether the SSA's reasons for not hiring Plaintiff were pretextual under a cat's-paw theory of liability. A separate Order follows.

DATED this  2 9  day of January, 2024.

BY THE COURT:

James K. Bredar
Chief Judge